UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JERRY DILLINGHAM,<br><br>    Plaintiff,<br><br>v.<br><br>F. GARCIA, et al.,<br><br>    Defendants. | Case No. 1:18-cv-00579-LJO-EPG (PC)<br><br>FINDINGS AND RECOMMENDATIONS, RECOMMENDING THAT THIS ACTION PROCEED ON PLAINTIFF'S CLAIMS AGAINST DEFENDANT GARCIA FOR CONSPIRACY, RETALIATION IN VIOLATION OF THE FIRST AMENDMENT, AND EXCESSIVE FORCE AND FAILURE TO PROTECT IN VIOLATION OF THE EIGHTH AMENDMENT, AND THAT ALL OTHER CLAIMS AND DEFENDANTS BE DISMISSED<br><br>(ECF NO. 1)<br><br>OBJECTIONS, IF ANY, DUE WITHIN TWENTY-ONE DAYS |

**I.    BACKGROUND**

Jerry Dillingham ("Plaintiff") is a state prisoner proceeding *pro se* and *in forma pauperis* with this civil rights action filed pursuant to 42 U.S.C. § 1983. Plaintiff filed the complaint commencing this action on April 30, 2018. (ECF No. 1).

On September 7, 2018, the Court issued a screening order, allowing Plaintiff to choose how he wanted to proceed with this case. (ECF No. 12). The Court allowed Plaintiff to: "1) File an amended complaint; 2) Notify the Court in writing that he is willing to go forward only with the claims against Defendant Garcia for conspiracy, retaliation in violation of the First Amendment, and excessive force and failure to protect in violation of the Eighth Amendment;

1

or 3) Notify the Court in writing that he wishes to stand on his complaint, subject to this Court issuing findings and recommendations consistent with this order to the assigned district judge." (Id. at 2).

On November 26, 2018, Plaintiff filed objections to the Court's "Report and Recommendations." (ECF No. 16). The Court construes this filing as Plaintiff choosing to stand on his complaint, subject to the Court issuing findings and recommendations consistent with the screening order to the district judge. Accordingly, the Court issues these findings and recommendations, recommending that this case proceed on Plaintiff's claims against Defendant Garcia for conspiracy, retaliation in violation of the First Amendment, and excessive force and failure to protect in violation of the Eighth Amendment, and that all other claims and defendants be dismissed.

As Plaintiff has already filed objections, Plaintiff does not need to object again. Instead, Plaintiff may file a notice with the Court indicating that he wants to stand on the objections he already filed.

## II.  SCREENING REQUIREMENT

The Court is required to screen complaints brought by prisoners seeking relief against a governmental entity or officer or employee of a governmental entity. 28 U.S.C. § 1915A(a). The Court must dismiss a complaint or portion thereof if the prisoner has raised claims that are legally "frivolous or malicious," that fail to state a claim upon which relief may be granted, or that seek monetary relief from a defendant who is immune from such relief. 28 U.S.C. § 1915A(b)(1), (2). As Plaintiff is proceeding *in forma pauperis* (ECF No. 9), the Court may also screen the complaint under 28 U.S.C. § 1915. "Notwithstanding any filing fee, or any portion thereof, that may have been paid, the court shall dismiss the case at any time if the court determines that the action or appeal fails to state a claim upon which relief may be granted." 28 U.S.C. § 1915(e)(2)(B)(ii).

A complaint is required to contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). Detailed factual allegations are not required, but "[t]hreadbare recitals of the elements of a cause of action, supported by mere

conclusory statements, do not suffice." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (citing Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007)). Plaintiff must set forth "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Id. (quoting Twombly, 550 U.S. at 570). The mere possibility of misconduct falls short of meeting this plausibility standard. Id. at 679. While a plaintiff's allegations are taken as true, courts "are not required to indulge unwarranted inferences." Doe I v. Wal-Mart Stores, Inc., 572 F.3d 677, 681 (9th Cir. 2009) (internal quotation marks and citation omitted). Additionally, a plaintiff's legal conclusions are not accepted as true. Iqbal, 556 U.S. at 678.

Pleadings of *pro se* plaintiffs "must be held to less stringent standards than formal pleadings drafted by lawyers." Hebbe v. Pliler, 627 F.3d 338, 342 (9th Cir. 2010) (holding that *pro se* complaints should continue to be liberally construed after Iqbal).

### III. SUMMARY OF PLAINTIFF'S COMPLAINT

Plaintiff alleges that, on or about September 24, 2016, Defendant Marsh approved Plaintiff to be housed in Building D1, the American with Disabilities ("ADA") Housing Unit. Within that Housing Unit, supervising officers, including Defendant Sherman and Defendant Marsh, tacitly allowed a "Housing Unit Cell Feeding Meals Service." As part of this policy, Plaintiff was not allowed to walk to the dining hall. Instead, breakfast and dinner meals were sent in on food carts.

The description of these meals is difficult to understand. From the best the Court can understand, Plaintiff complains that inmates were permitted to serve the meals to Plaintiff in his cell. For example, Plaintiff alleges that certain defendants "Abdicated to these convict's Housing Unit cell meal feeding serving service undirectly [sic] unsupervised. Sanctioning those convicts to diciplinarly [sic] run the unit housing, security cell shelter feeding meals service." (ECF No. 1, p. 5). Plaintiff alleges that certain defendants would tell inmates to serve the food that then "go[] into the Bldg. D1 staff office. Close's [sic] the door. Turn's [sic] off the light, sit's [sic] down and relax!" (Id.).

Plaintiff appears to claim that the inmate servers would sometimes take the tray back from certain inmates after several seconds, and put the tray right back on the food cart.

3

Plaintiff alleges that using inmates as food servers was dangerous because the inmates receiving food were informants, inmates who filed complaints against guards, inmates convicted of sex offenses, and/or rival gang-members. Plaintiff alleges that the inmate servers had access to caustic cleaning substances that could be put in the food. Plaintiff feared being poisoned. He refused meals. Plaintiff does not allege that this happened, or that any of the food he received was actually poisoned.

On December 8, 2016, Plaintiff alerted the housing unit sergeant of this policy. Plaintiff also alerted Defendant Ibarra.

On January 5, 2017, Plaintiff filed an emergency complaint based on the ADA with the warden and associate warden. Plaintiff cites to a "granted appeal," which is not attached to the complaint. Plaintiff claims that the response to his appeal stated that "Defendants Alvarado, Hyatt, Abbott et al., knew that they were practicing violating Housing Unit Cell Shelter Custody feeding meals safety security protocols with respect to one or more of the Exhibit #B fact's [sic], actions requested, issues appealed." (ECF No. 1, p. 8). Plaintiff similarly claims that the second level review concluded that certain defendants knowingly violated meal policies and that "conditions of confinement caused pain, suffering issues raise." (Id.). Plaintiff also cites to another exhibit, which is not attached to the complaint.

On January 4, 2017, Defendants sent two inmates to Plaintiff's cell, who identified themselves as "Convict Council Advisory Committee Members … from Bldg. D2 and D3." They stated that they try to resolve inmate issues. They said Plaintiff had filed a grievance about allowing "tier tender inmates to unsupervisedly [sic] feed inmates." (ECF No. 1, p. 9). They said Plaintiff's grievance was affecting the other building units and that correctional officers were very angry at Plaintiff because Plaintiff's 602 would force officers to handle feeding meals to inmates themselves. They accused Plaintiff of being a snitch. They told Plaintiff that "until the 602 writer is silenced Bldg. Custody assign officer are going to start making it hard on the Bldg. Convict's, Tier Tender's." (Id.). Plaintiff understood this to mean that the defendant correctional officers were very angry because they just wanted to sleep, watch tv, and play games instead of doing work.

Plaintiff alleges that there is a long standing and well-known practice at the prison of racketeering through Defendants using the prison for private gain. Plaintiff alleges that "[b]y indirectly or directly solicit [sic] the facility D-Housing unit cell assigned Bldg.'s 1-5 convicts, teir [sic] tenders, convict's [sic] et al., solicited them to kill, injure, harm Plaintiff chill [sic] to stop his exposing their pervasive life threatening potentially dangerous [practices]." (ECF No. 1, p. 10).

Shortly after January 26, 2017, Plaintiff was transferred to Bldg. D3. Plaintiff alleges this was done to cover up the practices he had exposed. Plaintiff alleges that he "suffered 39 days of being excluded from Bldg. D3 food feeding meals service," "[a]s a result of defendant's Ibarra, Marsh, Iverson, Kernan, AW Smith, Sherman et al., policy, custom, or practice of deliberately indifferently refusing to act to protect plaintiff." (Id. at 11). Plaintiff appears to allege that he refused to eat any meals during this time.

On February 28, 2017, Plaintiff filed an administrative grievance (again, Plaintiff states that it is attached to the complaint, but it was not attached). Plaintiff alleges that this grievance was granted and that the response to his appeal stated that Defendant Garcia was liable for Plaintiff's pain and suffering because he violated California Department of Corrections and Rehabilitation policies.

Around March 3, 2017, investigative personnel alerted Defendant Garcia that Plaintiff had filed a grievance against him. Plaintiff alleges that "on about 3/3/17 or 3/4/17 or 2/28/17, Defendant Garcia 'threaten [sic] Plaintiff [sic] life.' Threaten [sic] to cause Plaintiff greate [sic] bodily injury if Exhibit #B, Exhibit #C, grievance's [sic] cause's [sic] any problems for Garcia & his maintaining his Bldg. practicies [sic] Racketeering." (ECF No. 1, p. 12). This threat caused Plaintiff feared for his life.

On March 5, 2017, Plaintiff was left outside his cell door longer than other inmates. He observed Defendant Garcia talking to the control booth officer. Defendant Garcia indicated to control booth to let a certain inmate out of his cell. That inmate walked to Plaintiff and told him "Bldg. Officer's [sic] Garcia has let me, us convict's [sic] know Garcia want's [sic] you beaten and off the D-yard because you wrot [sic] a 602 causing Garcia & the facility D custody

problems...." (Id. at 13). This inmate then attacked Plaintiff by grabbing Plaintiff's neck and upper body area offensively, although Plaintiff managed to get free. Defendant Garcia watched this attack and did nothing to stop it. Plaintiff's injuries were treated at a hospital. Plaintiff also required Mental Psychological Psychiatric crisis bed treatment care following this attack.

Plaintiff was then transferred to CSATF Facility E, Bldg. E1. Upon Plaintiff's arrival, Defendant Dannials (or O'Donnled) disclosed Plaintiff's grievance to other inmates. Inmates threatened Plaintiff as a result of the grievance. Plaintiff then filed another grievance, claiming that officers and supervisors failed to protect him.

On April 3, 2017 (or April 4, 2017), an inmate who was a white or Mexican STG gang member attacked Plaintiff while he was walking to dining Hall facility E. The attacker, whose name was Herrera, stated that he was attacking Plaintiff for being a snitch. Plaintiff suffered physical and mental injuries.

During March 2017, while Plaintiff was kept in Facility D. Bldg. D3, inmate Ryan Chilcote declared under penalty of perjury that he was present with Defendant Garcia and others when Defendant Garcia told inmates that Plaintiff "really needs something done to him" because Plaintiff filed grievances. Plaintiff refers to the declaration, but it is not attached to the complaint.

On April 7, 2017, another inmate, George Hoover, swore under penalty of perjury that he observed a prison guard named Daniels allowing an inmate named King to go through Plaintiff's confidential personnel file and allowed the building rules enforcer to steal Plaintiff's typewriter.

**IV.    EVALUATION OF CLAIMS IN PLAINTIFF'S COMPLAINT**

**A.  Section 1983**

The Civil Rights Act under which this action was filed provides:

Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party

> injured in an action at law, suit in equity, or other proper proceeding for redress....

42 U.S.C. § 1983. "[Section] 1983 'is not itself a source of substantive rights,' but merely provides 'a method for vindicating federal rights elsewhere conferred.'" Graham v. Connor, 490 U.S. 386, 393-94 (1989) (quoting Baker v. McCollan, 443 U.S. 137, 144 n.3 (1979)); see also Chapman v. Houston Welfare Rights Org., 441 U.S. 600, 618 (1979); Hall v. City of Los Angeles, 697 F.3d 1059, 1068 (9th Cir. 2012); Crowley v. Nevada, 678 F.3d 730, 734 (9th Cir. 2012); Anderson v. Warner, 451 F.3d 1063, 1067 (9th Cir. 2006).

To state a claim under section 1983, a plaintiff must allege that (1) the defendant acted under color of state law, and (2) the defendant deprived him of rights secured by the Constitution or federal law. Long v. County of Los Angeles, 442 F.3d 1178, 1185 (9th Cir. 2006); see also Marsh v. Cnty. of San Diego, 680 F.3d 1148, 1158 (9th Cir. 2012) (discussing "under color of state law"). A person deprives another of a constitutional right, "within the meaning of § 1983, 'if he does an affirmative act, participates in another's affirmative act, or omits to perform an act which he is legally required to do that causes the deprivation of which complaint is made.'" Preschooler II v. Clark Cnty. Sch. Bd. of Trs., 479 F.3d 1175, 1183 (9th Cir. 2007) (quoting Johnson v. Duffy, 588 F.2d 740, 743 (9th Cir. 1978)). "The requisite causal connection may be established when an official sets in motion a 'series of acts by others which the actor knows or reasonably should know would cause others to inflict' constitutional harms." Preschooler II, 479 F.3d at 1183 (quoting Johnson, 588 F.2d at 743). This standard of causation "closely resembles the standard 'foreseeability' formulation of proximate cause." Arnold v. Int'l Bus. Mach. Corp., 637 F.2d 1350, 1355 (9th Cir. 1981); see also Harper v. City of Los Angeles, 533 F.3d 1010, 1026 (9th Cir. 2008).

Additionally, a plaintiff must demonstrate that each named defendant personally participated in the deprivation of his rights. Iqbal, 556 U.S. at 676-77. In other words, there must be an actual connection or link between the actions of the defendants and the deprivation alleged to have been suffered by Plaintiff. See Monell v. Dep't of Soc. Servs. of City of N.Y., 436 U.S. 658, 691, 695 (1978).

**B. Conditions of Confinement in Violation of the Eighth Amendment**

"It is undisputed that the treatment a prisoner receives in prison and the conditions under which [the prisoner] is confined are subject to scrutiny under the Eighth Amendment." Helling v. McKinney, 509 U.S. 25, 31 (1993); see also Farmer v. Brennan, 511 U.S. 825, 832 (1994). Conditions of confinement may, consistent with the Constitution, be restrictive and harsh. See Rhodes v. Chapman, 452 U.S. 337, 347 (1981); Morgan v. Morgensen, 465 F.3d 1041, 1045 (9th Cir. 2006); Osolinski v. Kane, 92 F.3d 934, 937 (9th Cir. 1996); Jordan v. Gardner, 986 F.2d 1521, 1531 (9th Cir. 1993) (*en banc*). Prison officials must, however, provide prisoners with "food, clothing, shelter, sanitation, medical care, and personal safety." Toussaint v. McCarthy, 801 F.2d 1080, 1107 (9th Cir. 1986), abrogated in part on other grounds by Sandin v. Connor, 515 U.S. 472 (1995); see also Johnson v. Lewis, 217 F.3d 726, 731 (9th Cir. 2000); Hoptowit v. Ray, 682 F.2d 1237, 1246 (9th Cir. 1982); Wright v. Rushen, 642 F.2d 1129, 1132-33 (9th Cir. 1981).

Two requirements must be met to show an Eighth Amendment violation. Farmer, 511 U.S. at 834. "First, the deprivation must be, objectively, sufficiently serious." Id. (internal quotation marks and citation omitted). Second, "prison officials must have a sufficiently culpable state of mind," which for conditions of confinement claims, "is one of deliberate indifference." Id. (internal quotation marks and citation omitted). Prison officials act with deliberate indifference when they know of and disregard an excessive risk to inmate health or safety. Id. at 837. The circumstances, nature, and duration of the deprivations are critical in determining whether the conditions complained of are grave enough to form the basis of a viable Eighth Amendment claim. Johnson v. Lewis, 217 F.3d 726, 731 (9th Cir. 2006). Mere negligence on the part of a prison official is not sufficient to establish liability, but rather, the official's conduct must have been wanton. Farmer, 511 U.S. at 835; Frost v. Agnos, 152 F.3d 1124, 1128 (9th Cir. 1998).

Plaintiff claims that he was subjected to unconstitutional conditions of confinement, constituting cruel and unusual punishment, because inmates served him meals instead of correctional officers. Plaintiff claims that the inmate servers could not be trusted and could

have contaminated his food. Plaintiff also claims that this practice violated prison policy and allowed staff correctional officers to avoid work. Plaintiff alleges he refused to eat for dozens of days as a result of the policy.

The Court finds that these allegations do not state a cognizable claim for cruel and unusual punishment. Being served by an inmate rather than a correctional officer is not unconstitutional by itself. Plaintiff does not allege that he was poisoned. Nor does he allege that any other inmate was poisoned because that inmate was served by an inmate. Nor does he allege that he was deprived of food. Instead, Plaintiff claims that he feared he would be poisoned and refused to eat. Plaintiff's fear, without any allegations that could show that his fear was justified, does not mean that this condition was sufficiently serious and dangerous to be unconstitutional.

Plaintiff also alleges that this arrangement violated prison policy and allowed correctional officers to escape work. While this may be true, it does not mean that the policy violates the constitution. Plaintiff also fails to show that the correctional officer defendants created this policy with knowledge that it would put Plaintiff at serious risk. Instead, Plaintiff's allegations appear to show that correctional officers implemented this policy in order to avoid work.

**C. Supervisor Liability**

Supervisory personnel are generally not liable under section 1983 for the actions of their employees under a theory of *respondeat superior* and, therefore, when a named defendant holds a supervisory position, the causal link between him and the claimed constitutional violation must be specifically alleged. Iqbal, 556 U.S. at 676-77; Fayle v. Stapley, 607 F.2d 858, 862 (9th Cir. 1979); Mosher v. Saalfeld, 589 F.2d 438, 441 (9th Cir. 1978). To state a claim for relief under section 1983 based on a theory of supervisory liability, Plaintiff must allege some facts that would support a claim that the supervisory defendants either: personally participated in the alleged deprivation of constitutional rights; knew of the violations and failed to act to prevent them; or promulgated or "implemented a policy so deficient that the policy 'itself is a repudiation of constitutional rights' and is 'the moving force of the constitutional

violation.'" Hansen v. Black, 885 F.2d 642, 646 (9th Cir. 1989) (internal citations omitted); Taylor v. List, 880 F.2d 1040, 1045 (9th Cir. 1989). For instance, a supervisor may be liable for his "own culpable action or inaction in the training, supervision, or control of his subordinates," "his acquiescence in the constitutional deprivations of which the complaint is made," or "conduct that showed a reckless or callous indifference to the rights of others." Larez v. City of Los Angeles, 946 F.2d 630, 646 (9th Cir. 1991) (internal citations, quotation marks, and alterations omitted).

Plaintiff brings claims against several supervisors, including a warden, an associate warden, and a correctional captain administrator. As Plaintiff has not sufficiently connected any of these defendants to the alleged deprivation of his constitutional rights under the standards laid out above, the Court finds that Plaintiff has failed to state a claim against any of the supervisory defendants. The allegation that Plaintiff filed grievance(s) related to the alleged deprivations is not enough to show that these defendants knew of the violations and failed to act to prevent them.

**D. Retaliation in Violation of the First Amendment**

Allegations of retaliation against a prisoner's First Amendment rights may support a section 1983 claim. Rizzo v. Dawson, 778 F.2d 527, 532 (9th Cir. 1985). See also Valandingham v. Bojorquez, 866 F.2d 1135 (9th Cir. 1989); Pratt v. Rowland, 65 F.3d 802, 807 (9th Cir. 1995). A retaliation claim requires "five basic elements: (1) an assertion that a state actor took some adverse action against an inmate (2) because of (3) that prisoner's protected conduct, and that such action (4) chilled the inmate's exercise of his First Amendment rights, and (5) the action did not reasonably advance a legitimate correctional goal." Rhodes v. Robinson, 408 F.3d 559, 567-68 (9th Cir. 2005) (footnote omitted); accord Watson v. Carter, 668 F.3d 1108, 1114-15 (9th Cir. 2012); Brodheim v. Cry, 584 F.3d 1262, 1269 (9th Cir. 2009).

While prisoners have no freestanding right to a prison grievance process, see Ramirez v. Galaza, 334 F.3d 850, 860 (9th Cir.2003), "a prisoner's fundamental right of access to the courts hinges on his ability to access the prison grievance system," Bradley v. Hall, 64 F.3d

1276, 1279 (9th Cir.1995), overruled on other grounds by Shaw v. Murphy, 532 U.S. 223, 230 n. 2, 121 S.Ct. 1475, 149 L.Ed.2d 420 (2001). Because filing administrative grievances and initiating civil litigation are protected activities, it is impermissible for prison officials to retaliate against prisoners for engaging in these activities. Rhodes, 408 F.3d at 567.

Plaintiff has stated a claim for retaliation in violation of the First Amendment as to Defendant Garcia. Plaintiff alleges that Defendant Garcia threatened Plaintiff's life and told other inmates to attack Plaintiff because Plaintiff wrote 602 grievances against him. These allegations state a colorable First Amendment claim that can proceed past screening.

However, Plaintiff has failed to sufficiently allege that any other defendant was personally involved in the alleged deprivation.

**E.  Excessive Force and Failure to Protect in Violation of the Eighth Amendment**

"In its prohibition of 'cruel and unusual punishments,' the Eighth Amendment places restraints on prison officials, who may not... use excessive physical force against prisoners." Farmer, 511 at 832. "[W]henever prison officials stand accused of using excessive physical force in violation of the [Eighth Amendment], the core judicial inquiry is... whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm." Hudson v. McMillian, 503 U.S. 1, 6–7 (1992).

When determining whether the force was excessive, the court looks to the "extent of injury suffered by an inmate..., the need for application of force, the relationship between that need and the amount of force used, the threat 'reasonably perceived by the responsible officials,' and 'any efforts made to temper the severity of a forceful response.'" Hudson, 503 U.S. at 7 (quoting Whitley v. Albers, 475 U.S. 312, 321 (1986)). While *de minimis* uses of physical force generally do not implicate the Eighth Amendment, significant injury need not be evident in the context of an excessive force claim, because "[w]hen prison officials maliciously and sadistically use force to cause harm, contemporary standards of decency always are violated." Hudson, 503 U.S. at 9.

Under the Eighth Amendment, prison officials have a duty to protect prisoners from violence at the hands of other prisoners. Farmer, 511 U.S. at 833. To establish a violation of

this duty, the prisoner must establish that prison officials were deliberately indifferent to serious threats to the inmate's safety. Id. at 834. "'Deliberate indifference' has both subjective and objective components." Labatad v. Corr. Corp. of Am., 714 F.3d 1155, 1160 (9th Cir. 2013). The prisoner must show that "the official [knew] of and disregard[ed] an excessive risk to inmate ... safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and [the official] must also draw the inference." Farmer, 511 U.S. at 837. "Liability may follow only if a prison official 'knows that inmates face a substantial risk of serious harm and disregards that risk by failing to take reasonable measures to abate it.'" Labatad, 714 F.3d at 1160 (quoting Farmer, 511 U.S. at 847).

Plaintiff alleges that Defendant Garcia directed an inmate to attack him and also watched the attack without trying to prevent it. These allegations state an Eighth Amendment claim for excessive force and failure to protect against Defendant Garcia.

However, Plaintiff has failed to sufficiently allege that any other defendant was personally involved in the alleged deprivation.

**F. Conspiracy**

To state a claim for conspiracy under section 1983, Plaintiff must show the existence of an agreement or meeting of the minds to violate constitutional rights, Avalos v. Baca, 596 F.3d 583, 592 (9th Cir. 2010); Franklin v. Fox, 312 F.3d 423, 441 (9th Cir. 2001), and that an "actual deprivation of his constitutional rights resulted from the alleged conspiracy," Hart v. Parks, 450 F.3d 1059, 1071 (9th Cir. 2006) (quoting Woodrum v. Woodward County, Oklahoma, 866 F.2d 1121, 1126 (9th Cir. 1989)). "'To be liable, each participant in the conspiracy need not know the exact details of the plan, but each participant must at least share the common objective of the conspiracy.'" Franklin, 312 F.3d at 441 (quoting United Steelworkers of Am. v. Phelps Dodge Corp., 865 F.2d 1539, 1541 (9th Cir.1989)).

Plaintiff alleges that Defendant Garcia conspired with an inmate to have the inmate attack Plaintiff. Accordingly, the Court finds that Plaintiff has stated a cognizable conspiracy claim against Defendant Garcia.

However, Plaintiff has failed to sufficiently allege that any other defendant was personally involved in the alleged deprivation.

### G. Racketeer Influenced and Corrupt Organizations Act

It appears that Plaintiff is attempting to assert a Racketeer Influenced and Corrupt Organizations Act ("RICO") claim under 18 U.S.C. § 1962(c). "A violation of § 1962(c)… requires (1) conduct (2) of an enterprise (3) through a pattern (4) of racketeering activity." Sedima, S.P.R.L. v. Imrex Co., 473 U.S. 479, 496 (1985) (footnote omitted); Odom v. Microsoft Corp., 486 F.3d 541, 547 (9th Cir. 2007).

The Court finds that Plaintiff has not sufficiently alleged that any of the defendants engaged in racketeering activity as defined in 18 U.S.C. § 1961.

### H. Americans with Disabilities Act

Title II of the Americans with Disabilities Act ("ADA") provides that "no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subject to discrimination by such entity." 42 U.S.C. § 12132. Title II applies to inmates within state prisons. Pennsylvania Dept. of Corrections v. Yeskey, 524 U.S. 206 (1998). See also Armstrong v. Wilson, 124 F.3d 1019, 1023 (9th Cir. 1997); Duffy v. Riveland, 98 F.3d 447, 453-56 (9th Cir. 1996). "To establish a violation of Title II of the ADA, a plaintiff must show that (1) [he] is a qualified individual with a disability; (2) [he] was excluded from participation in or otherwise discriminated against with regard to a public entity's services, programs, or activities; and (3) such exclusion or discrimination was by reason of [his] disability." Lovell v. Chandler, 303 F.3d 1039, 1052 (9th Cir. 2002).

Although Plaintiff states that he has an ADA claim, he does not allege that he was excluded from participation in or denied benefits based on his disability. He does not describe any disability or state why he was discriminated on the basis of that disability. Accordingly, the Court finds that Plaintiff has failed to state a claim for violation of the ADA.

### V. CONCLUSION AND RECOMMENDATIONS

The Court has screened Plaintiff's complaint and finds that it states non-frivolous

claims against Defendant Garcia for conspiracy, retaliation in violation of the First Amendment, and excessive force and failure to protect in violation of the Eighth Amendment. The Court also finds that Plaintiff's complaint fails to state any other cognizable claims.

As Plaintiff chose to stand on his complaint instead of filing an amended complaint, the Court does not recommend granting further leave to amend.

Accordingly, based on the foregoing, it is HEREBY RECOMMENDED that:

1. This case proceed on Plaintiff's claims against Defendant Garcia for conspiracy, retaliation in violation of the First Amendment, and excessive force and failure to protect in violation of the Eighth Amendment; and
2. All other claims and defendants be dismissed.

These findings and recommendations are submitted to the United States district judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l). Within **twenty-one (21) days** after being served with these findings and recommendations, Plaintiff may file written objections with the Court or a notice indicating that he wants to stand on the objections he already filed. If Plaintiff chooses to file new objections, such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations."

Failure to file objections within the specified time may result in the waiver of rights on appeal. Wilkerson v. Wheeler, 772 F.3d 834, 838-39 (9th Cir. 2014) (citing Baxter v. Sullivan, 923 F.2d 1391, 1394 (9th Cir. 1991)).

IT IS SO ORDERED.

Dated: **November 27, 2018**  /s/ Erica P. Grosjean
UNITED STATES MAGISTRATE JUDGE