# UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JERRY DILLINGHAM,<br><br>　　　　Plaintiff,<br><br>　　v.<br><br>F. GARCIA,<br><br>　　　　Defendant. | Case No. 1:18-cv-00579-LJO-EPG-PC<br><br>FINDINGS AND RECOMMENDATION TO DENY PLAINTIFF'S MOTION FOR LEAVE TO FILE AN AMENDED COMPLAINT, GRANT IN PART AND DENY IN PART DEFENDANT'S MOTION TO DISMISS, AND DENY PLAINTIFF'S MOTION FOR ORDER DIRECTING DEFENDANT TO FILE ANSWER<br><br>(ECF Nos. 23, 35, 84)<br><br>OBJECTIONS, IF ANY, DUE WITHIN THIRTY DAYS |

Jerry Dillingham ("Plaintiff") is a state prisoner proceeding *pro se* and *in forma pauperis* in this civil rights action filed pursuant to 42 U.S.C. § 1983. Before the Court are Plaintiff's motion for leave to file an amended complaint, Defendant Garcia's motion to dismiss the Complaint, and Plaintiff's motion for an order directing Defendant to file an answer. For the reasons described below, the undersigned recommends that Plaintiff's motion for leave to file an amended complaint be denied, Defendant Garcia's motion to dismiss be granted in part and denied in part, and Plaintiff's motion for an order directing Defendant to file an answer be denied.

///

1

**I.     BACKGROUND**

Plaintiff filed the Complaint commencing this action on April 30, 2018. (ECF No. 1). On September 7, 2018, the Court issued a screening order, allowing Plaintiff to choose how he wanted to proceed with this case. (ECF No. 12). The Court allowed Plaintiff to: "1) File an amended complaint; 2) Notify the Court in writing that he is willing to go forward only with the claims against Defendant Garcia for conspiracy, retaliation in violation of the First Amendment, and excessive force and failure to protect in violation of the Eighth Amendment; or 3) Notify the Court in writing that he wishes to stand on his complaint, subject to this Court issuing findings and recommendations consistent with this order to the assigned district judge." (ECF No. 12 at 2).[1]

On October 3, 2018, the Court granted Plaintiff's motion for a thirty-day extension of time to file an amended complaint. (ECF Nos. 13, 15). On November 26, 2018, Plaintiff filed objections to the Court's "Report and Recommendations." (ECF No. 16). The Court construed this filing as Plaintiff choosing to stand on his Complaint, subject to the Court issuing findings and recommendations consistent with the screening order to the District Judge. (ECF No. 17 at 2). Accordingly, on November 28, 2018, the Court issued findings and recommendations "recommending that this case proceed on Plaintiff's claims against Defendant Garcia for conspiracy, retaliation in violation of the First Amendment, and excessive force and failure to protect in violation of the Eighth Amendment, and that all other claims and defendants be dismissed." (Id.).

On December 26, 2018, Plaintiff filed a motion for extension of time to file an amended complaint. (ECF No. 18). On January 2, 2019, Plaintiff filed objections to the findings and recommendations. (ECF No. 20). On January 10, 2019, the District Judge adopted the November 28, 2018 findings and recommendations in full, ordering that this action proceed "on Plaintiff's claims against Defendant Garcia for conspiracy, retaliation in violation of the First Amendment, and excessive force and failure to protect in violation of the Eighth Amendment." (ECF No. 21 at 4). The District Judge also denied Plaintiff's motion for extension of time to file an amended

---
[1] Page numbers refer to the ECF page numbers stamped at the top of the page.

complaint because it was untimely and upon review, Plaintiff's proposed amended complaint appeared "to suffer from most of the same defects as the original complaint." (Id.).

On February 1, 2019, Plaintiff filed a motion for leave to file an amended complaint and lodged a proposed First Amended Complaint. (ECF Nos. 23, 24). Defendant Garcia filed an opposition, and Plaintiff filed a reply. (ECF Nos. 33, 39).

On April 22, 2019, Defendant Garcia filed a motion to dismiss Plaintiff's claims for excessive force and conspiracy. (ECF No. 35). Plaintiff filed an opposition, and Defendant Garcia filed a reply. (ECF Nos. 42, 43).

On November 18, 2019, Plaintiff filed a motion for the Court to issue an order directing Defendant Garcia to file an answer to the original Complaint. (ECF No. 84).

## II. SUMMARY OF PLAINTIFF'S COMPLAINT[2]

Plaintiff alleges that, on or about September 24, 2016, Defendant Marsh approved Plaintiff to be housed in Building D1, the American with Disabilities ("ADA") Housing Unit. Within that Housing Unit, supervising officers, including Defendant Sherman and Defendant Marsh, tacitly allowed a "Housing Unit Cell Feeding Meals Service." As part of this policy, Plaintiff was not allowed to walk to the dining hall. Instead, breakfast and dinner meals were sent in on food carts.

The description of these meals is difficult to understand. From the best the Court can understand, Plaintiff complains that inmates were permitted to serve the meals to Plaintiff in his cell. For example, Plaintiff alleges that certain defendants "Abdicated to these convict's Housing Unit cell meal feeding serving service undirectly [sic] unsupervised. Sanctioning those convicts to diciplinarly [sic] run the unit housing, security cell shelter feeding meals service." (ECF No. 1, p. 5). Plaintiff alleges that certain defendants would tell inmates to serve the food that then "go[] into the Bldg. D1 staff office. Close's [sic] the door. Turn's [sic] off the light, sit's [sic] down and relax!" (Id.).

///

---

[2] This summary of the Complaint is taken from the findings and recommendation issued on November 28, 2018. (ECF No. 17 at 3–6).

1 |     Plaintiff appears to claim that the inmate servers would sometimes take the tray back from certain inmates after several seconds, and put the tray right back on the food cart.

    Plaintiff alleges that using inmates as food servers was dangerous because the inmates receiving food were informants, inmates who filed complaints against guards, inmates convicted of sex offenses, and/or rival gang-members. Plaintiff alleges that the inmate servers had access to caustic cleaning substances that could be put in the food. Plaintiff feared being poisoned. He refused meals. Plaintiff does not allege that this happened, or that any of the food he received was actually poisoned.

    On December 8, 2016, Plaintiff alerted the housing unit sergeant of this policy. Plaintiff also alerted Defendant Ibarra.

    On January 5, 2017, Plaintiff filed an emergency complaint based on the ADA with the warden and associate warden. Plaintiff cites to a "granted appeal," which is not attached to the complaint. Plaintiff claims that the response to his appeal stated that "Defendants Alvarado, Hyatt, Abbott et al., knew that they were practicing violating Housing Unit Cell Shelter Custody feeding meals safety security protocols with respect to one or more of the Exhibit #B fact's [sic], actions requested, issues appealed." (ECF No. 1, p. 8). Plaintiff similarly claims that the second level review concluded that certain defendants knowingly violated meal policies and that "conditions of confinement caused pain, suffering issues raise." (Id.). Plaintiff also cites to another exhibit, which is not attached to the complaint.

    On January 4, 2017, Defendants sent two inmates to Plaintiff's cell, who identified themselves as "Convict Council Advisory Committee Members … from Bldg. D2 and D3." They stated that they try to resolve inmate issues. They said Plaintiff had filed a grievance about allowing "tier tender inmates to unsupervisedly [sic] feed inmates." (ECF No. 1, p. 9). They said Plaintiff's grievance was affecting the other building units and that correctional officers were very angry at Plaintiff because Plaintiff's 602 would force officers to handle feeding meals to inmates themselves. They accused Plaintiff of being a snitch. They told Plaintiff that "until the 602 writer is silenced Bldg. Custody assign officer are going to start making it hard on the Bldg. Convict's, Tier Tender's." (Id.). Plaintiff understood this to mean that the defendant correctional

officers were very angry because they just wanted to sleep, watch tv, and play games instead of doing work.

Plaintiff alleges that there is a long standing and well-known practice at the prison of racketeering through Defendants using the prison for private gain. Plaintiff alleges that "[b]y indirectly or directly solicit [sic] the facility D-Housing unit cell assigned Bldg.'s 1-5 convicts, teir [sic] tenders, convict's [sic] et al., solicited them to kill, injure, harm Plaintiff chill [sic] to stop his exposing their pervasive life threatening potentially dangerous [practices]." (ECF No. 1, p. 10).

Shortly after January 26, 2017, Plaintiff was transferred to Bldg. D3. Plaintiff alleges this was done to cover up the practices he had exposed. Plaintiff alleges that he "suffered 39 days of being excluded from Bldg. D3 food feeding meals service," "[a]s a result of defendant's Ibarra, Marsh, Iverson, Kernan, AW Smith, Sherman et al., policy, custom, or practice of deliberately indifferently refusing to act to protect plaintiff." (Id. at 11). Plaintiff appears to allege that he refused to eat any meals during this time.

On February 28, 2017, Plaintiff filed an administrative grievance (again, Plaintiff states that it is attached to the complaint, but it was not attached). Plaintiff alleges that this grievance was granted and that the response to his appeal stated that Defendant Garcia was liable for Plaintiff's pain and suffering because he violated California Department of Corrections and Rehabilitation policies.

Around March 3, 2017, investigative personnel alerted Defendant Garcia that Plaintiff had filed a grievance against him. Plaintiff alleges that "on about 3/3/17 or 3/4/17 or 2/28/17, Defendant Garcia 'threaten [sic] Plaintiff [sic] life.' Threaten [sic] to cause Plaintiff greate [sic] bodily injury if Exhibit #B, Exhibit #C, grievance's [sic] cause's [sic] any problems for Garcia & his maintaining his Bldg. practicies [sic] Racketeering." (ECF No. 1, p. 12). This threat caused Plaintiff feared for his life.

On March 5, 2017, Plaintiff was left outside his cell door longer than other inmates. He observed Defendant Garcia talking to the control booth officer. Defendant Garcia indicated to control booth to let a certain inmate out of his cell. That inmate walked to Plaintiff and told him

1 | "Bldg. Officer's [sic] Garcia has let me, us convict's [sic] know Garcia want's [sic] you beaten
2 | and off the D-yard because you wrot [sic] a 602 causing Garcia & the facility D custody
3 | problems…." (Id. at 13). This inmate then attacked Plaintiff by grabbing Plaintiff's neck and
4 | upper body area offensively, although Plaintiff managed to get free. Defendant Garcia watched
5 | this attack and did nothing to stop it. Plaintiff's injuries were treated at a hospital. Plaintiff also
6 | required Mental Psychological Psychiatric crisis bed treatment care following this attack.

Plaintiff was then transferred to CSATF Facility E, Bldg. E1. Upon Plaintiff's arrival, Defendant Dannials (or O'Donnled) disclosed Plaintiff's grievance to other inmates. Inmates threatened Plaintiff as a result of the grievance. Plaintiff then filed another grievance, claiming that officers and supervisors failed to protect him.

On April 3, 2017 (or April 4, 2017), an inmate who was a white or Mexican STG gang member attacked Plaintiff while he was walking to dining Hall facility E. The attacker, whose name was Herrera, stated that he was attacking Plaintiff for being a snitch. Plaintiff suffered physical and mental injuries.

During March 2017, while Plaintiff was kept in Facility D. Bldg. D3, inmate Ryan Chilcote declared under penalty of perjury that he was present with Defendant Garcia and others when Defendant Garcia told inmates that Plaintiff "really needs something done to him" because Plaintiff filed grievances. Plaintiff refers to the declaration, but it is not attached to the complaint.

On April 7, 2017, another inmate, George Hoover, swore under penalty of perjury that he observed a prison guard named Daniels allowing an inmate named King to go through Plaintiff's confidential personnel file and allowed the building rules enforcer to steal Plaintiff's typewriter.

### III.    MOTION TO AMEND

On February 1, 2019, Plaintiff filed a motion for leave to file an amended complaint along with a proposed First Amended Complaint ("proposed FAC"). (ECF Nos. 23, 24). In his opposition, Defendant Garcia argues that denying leave to amend does not offend notions of justice because Plaintiff failed to avail himself of previous opportunities to amend and that granting leave to amend would be futile because the proposed FAC suffers from most of the same defects found in the original Complaint. (ECF No. 33 at 3–6).

Courts "should freely give leave [to amend] when justice so requires." Fed. R. Civ. P. 15(a)(2). "[T]his policy is to be applied with extreme liberality." Morongo Band of Mission Indians v. Rose, 893 F.2d 1074, 1079 (9th Cir. 1990). See also Waldrip v. Hall, 548 F.3d 729, 732 (9th Cir. 2008). "However, liberality in granting leave to amend is subject to several limitations. Those limitations include undue prejudice to the opposing party, bad faith by the movant, futility, and undue delay." Cafasso, U.S. ex rel. v. Gen. Dynamics C4 Sys., Inc., 637 F.3d 1047, 1058 (9th Cir. 2011) (internal quotation marks and citations omitted). See also Waldrip, 548 F.3d at 732.

Having reviewed Plaintiff's proposed FAC, the undersigned will recommend that Plaintiff's motion for leave to file an amended complaint be denied given that: (1) the proposed FAC suffers from most of the same defects as the original Complaint; and (2) Plaintiff's new conclusory allegations of food deprivation are insufficient to state a claim.

For example, Plaintiff reasserts claims against multiple supervisors, including the Secretary of the California Department of Corrections and Rehabilitation, a warden, an associate warden, and a correctional captain administrator, without alleging sufficient facts that demonstrate the supervisory defendants either: personally participated in the alleged deprivation of constitutional rights; knew of the violations and failed to act to prevent them; or promulgated or "implemented a policy so deficient that the policy 'itself is a repudiation of constitutional rights' and is 'the moving force of the constitutional violation.'" Hansen v. Black, 885 F.2d 642, 646 (9th Cir. 1989) (internal citations omitted); Taylor v. List, 880 F.2d 1040, 1045 (9th Cir. 1989). As the Court previously informed Plaintiff, the "allegation that Plaintiff filed grievance(s) related to the alleged deprivations is not enough to show that these [supervisory] defendants knew of the violations and failed to act to prevent them." (ECF No. 17 at 10).

Plaintiff also attempts to reassert a Racketeer Influenced and Corrupt Organizations Act ("RICO") claim under 18 U.S.C. § 1962(c). However, as with the original Complaint, "Plaintiff has not sufficiently alleged that any of the defendants engaged in racketeering activity as defined in 18 U.S.C. § 1961." (ECF No. 17 at 13). Similarly, Plaintiff's attempt to reassert an ADA claim suffers from the same deficiencies as the original Complaint because Plaintiff "does not describe

any disability or state why he was discriminated on the basis of that disability." (Id.).

The Court previously held that Plaintiff's allegations of being served meals by inmates rather than correctional officers failed to state a cognizable claim for cruel and unusual punishment, noting that Plaintiff does not allege that he was deprived of food, for example. (ECF No. 17 at 9). In the proposed FAC, Plaintiff now alleges that various defendants conspired to deprive Plaintiff of food. These new conclusory allegations are insufficient to state a claim because Plaintiff fails to allege facts describing the scheme and the personal acts committed by the individual defendants that resulted in Plaintiff being deprived of food.

The Court also notes that Plaintiff cites to Exhibits A, B, and C in support of his deprivation of food claim. (ECF No. 39 at 7). However, these exhibits, consisting of Plaintiff's grievances, demonstrate that the underlying conduct Plaintiff was complaining about at the time was that meals were being served by inmates rather than correctional officers. (ECF No. 24 at 33–61). Plaintiff's contradictory allegations in the original Complaint and the proposed FAC appear to be a misguided attempt to transform the underlying alleged misconduct regarding inmates handling meals into a constitutional violation.[3] However, as the Court has previously informed Plaintiff, being served meals by inmates rather than correctional officers—even in violation of prison policy—is not unconstitutional by itself.

Accordingly, the Court finds that granting leave to file the proposed FAC would not be in the interest of justice given that Plaintiff failed to timely file an amended complaint when the Court previously granted leave to amend, the case is currently proceeding on claims the Court has found to be cognizable, the proposed FAC suffers from the same deficiencies as claims and defendants previously dismissed, and Plaintiff's new contradictory and conclusory allegations of

---

[3] This conclusion is buttressed by the fact that in his reply, Plaintiff emphasizes that the proposed FAC does not allege that defendants permitted inmates to serve meals. (ECF No. 39 at 6). It is unclear whether a plaintiff may file successive pleading with irreconcilably contradictory allegations. Compare PAE Gov't Servs., Inc. v. MPRI, Inc., 514 F.3d 856, 860 (9th Cir. 2007) ("The short of it is that there is nothing in the Federal Rules of Civil Procedure to prevent a party from filing successive pleadings that make inconsistent or even contradictory allegations. Unless there is a showing that the party acted in bad faith—a showing that can only be made after the party is given an opportunity to respond under the procedures of Rule 11—inconsistent allegations are simply not a basis for striking the pleading."), with Reddy v. Litton Industries, Inc., 912 F.2d 291 (9th Cir. 1990) ("Although leave to amend should be liberally granted, the amended complaint may only allege 'other facts consistent with the challenged pleading.'"). See Shirley v. Univ. of Idaho, Coll. of Law, 800 F.3d 1193 (9th Cir. 2015).

8

food deprivation are insufficient to state a claim. Therefore, the motion to amend should be denied.

## IV. MOTION TO DISMISS

### A. Legal Standard

In considering a motion to dismiss, the Court must accept all allegations of material fact in the complaint as true. Erickson v. Pardus, 551 U.S. 89, 93–94 (2007); Hosp. Bldg. Co. v. Rex Hosp. Trustees, 425 U.S. 738, 740 (1976). The Court must also construe the alleged facts in the light most favorable to the plaintiff. Scheuer v. Rhodes, 416 U.S. 232, 236 (1974), abrogated on other grounds by Harlow v. Fitzgerald, 457 U.S. 800 (1982); Barnett v. Centoni, 31 F.3d 813, 816 (9th Cir.1994) (per curiam). All ambiguities or doubts must also be resolved in the plaintiff's favor. See Jenkins v. McKeithen, 395 U.S. 411, 421 (1969). In addition, *pro se* pleadings "must be held to less stringent standards than formal pleadings drafted by lawyers." Hebbe v. Pliler, 627 F.3d 338, 342 (9th Cir. 2010).

A motion to dismiss pursuant to Rule 12(b)(6) operates to test the sufficiency of the complaint. See Ashcroft v. Iqbal, 556 U.S. 662, 679 (2009). Rule 8(a)(2) requires only "a short and plain statement of the claim showing that the pleader is entitled to relief" in order to "give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007) (quoting Conley v. Gibson, 355 U.S. 41, 47 (1957)). "The issue is not whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claims." Scheuer, 416 U.S. at 236.

The first step in testing the sufficiency of the complaint is to identify any conclusory allegations. Iqbal, 556 U.S. at 679. "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Id. at 678 (citing Twombly, 550 U.S. at 555). "[A] plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." Twombly, 550 U.S. at 555 (citations and quotation marks omitted).

After assuming the veracity of all well-pleaded factual allegations, the second step is for the court to determine whether the complaint pleads "a claim to relief that is plausible on its

face." Iqbal, 556 U.S. at 678 (citing Twombly, 550 U.S. at 556) (rejecting the traditional 12(b)(6) standard set forth in Conley, 355 U.S. at 45–46). A claim is facially plausible when the plaintiff "pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Iqbal, 556 U.S. at 678 (citing Twombly, 550 U.S. at 556). The standard for plausibility is not akin to a "probability requirement," but it requires "more than a sheer possibility that a defendant has acted unlawfully." Iqbal, 556 U.S. at 678.

In deciding a Rule 12(b)(6) motion, the Court generally may not consider materials outside the complaint and pleadings. Cooper v. Pickett, 137 F.3d 616, 622 (9th Cir. 1998); Gumataotao v. Dir. of Dep't of Revenue & Taxation, 236 F.3d 1077, 1083 (9th Cir. 2001).

**B. Discussion**

1. Excessive Force

Defendant Garcia argues that as Plaintiff does not allege that Defendant Garcia personally applied any force, the Eighth Amendment excessive force claim should be dismissed. Defendant Garcia contends that the allegations that he directed an inmate to attack Plaintiff for retaliatory purposes and watched the attack without trying to prevent it sound in conspiracy, retaliation, and deliberate indifference rather than excessive force. (ECF No. 35-1 at 6–7).

"In its prohibition of 'cruel and unusual punishments,' the Eighth Amendment places restraints on prison officials, who may not . . . use excessive physical force against prisoners." Farmer v. Brennan, 511 825, 832 (1994). "[W]henever prison officials stand accused of using excessive physical force in violation of the [Eighth Amendment], the core judicial inquiry is . . . whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm." Hudson v. McMillian, 503 U.S. 1, 6–7 (1992).

Under the Eighth Amendment, prison officials also have a duty to protect prisoners from violence at the hands of other prisoners. Farmer, 511 U.S. at 833. To establish a violation of this duty, the prisoner must establish that prison officials were deliberately indifferent to serious threats to the inmate's safety. Id. at 834. "'Deliberate indifference' has both subjective and objective components." Labatad v. Corr. Corp. of Am., 714 F.3d 1155, 1160 (9th Cir. 2013). The prisoner must show that "the official [knew] of and disregard[ed] an excessive risk to inmate . . .

safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and [the official] must also draw the inference." Farmer, 511 U.S. at 837. "Liability may follow only if a prison official 'knows that inmates face a substantial risk of serious harm and disregards that risk by failing to take reasonable measures to abate it.'" Labatad, 714 F.3d at 1160 (quoting Farmer, 511 U.S. at 847).

As Defendant Garcia correctly notes, the Complaint does not allege that Defendant Garcia personally applied any force. Plaintiff's allegations that Defendant Garcia directed an inmate to attack Plaintiff for retaliatory purposes and watched the attack without trying to prevent it sound in conspiracy, retaliation, and deliberate indifference. Accordingly, Defendant Garcia's motion to dismiss should be granted with respect to the excessive force claim.

2. Conspiracy

Defendant Garcia argues that Plaintiff has failed to state a claim for conspiracy because Plaintiff has not pleaded facts showing the existence of an agreement or meeting of the minds to violate constitutional rights. To state a claim for conspiracy under § 1983, Plaintiff must show the existence of an agreement or meeting of the minds to violate constitutional rights, Avalos v. Baca, 596 F.3d 583, 592 (9th Cir. 2010); Franklin v. Fox, 312 F.3d 423, 441 (9th Cir. 2001), and that an "actual deprivation of his constitutional rights resulted from the alleged conspiracy," Hart v. Parks, 450 F.3d 1059, 1071 (9th Cir. 2006) (quoting Woodrum v. Woodward County, 866 F.2d 1121, 1126 (9th Cir. 1989)). "'To be liable, each participant in the conspiracy need not know the exact details of the plan, but each participant must at least share the common objective of the conspiracy.'" Franklin, 312 F.3d at 441 (quoting United Steelworkers of Am. v. Phelps Dodge Corp., 865 F.2d 1539, 1541 (9th Cir.1989)).

Here, Plaintiff alleges that on March 5, 2017, Plaintiff was left outside his cell door longer than other inmates. He observed Defendant Garcia talking to the control booth officer. Defendant Garcia indicated to control booth to let a certain inmate out of his cell. That inmate walked to Plaintiff and told him "Bldg. Officer's [sic] Garcia has let me, us convict's [sic] know Garcia want's [sic] you beaten and off the D-yard because you wrot [sic] a 602 causing Garcia & the facility D custody problems…." (Id. at 13). This inmate then attacked Plaintiff by grabbing

Plaintiff's neck and upper body area offensively, although Plaintiff managed to get free. Defendant Garcia watched this attack and did nothing to stop it. The Complaint also alleges that according to inmate Ryan Chilcote, during March 2017 while Plaintiff was kept in Facility D. Bldg. D3, Chilcote was present with Defendant Garcia and others when Defendant Garcia told inmates that Plaintiff "really needs something done to him" because Plaintiff filed grievances.

Although Defendant Garcia raises doubts about the likelihood of a meeting of the minds between a correctional officer and an inmate given the "adversarial nature of prison conditions" and "Defendant's coercive tactics," in considering a motion to dismiss the Court must accept all allegations as true and construe the alleged facts in the light most favorable to Plaintiff. Therefore, the Court finds that Plaintiff has alleged sufficient facts to demonstrate that there was an agreement or meeting of the minds between Defendant Garcia and an inmate to violate Plaintiff's Eighth Amendment right to be free from cruel and unusual punishment. Accordingly, Defendant Garcia's motion to dismiss the conspiracy claim should be denied.

## V. MOTION FOR ANSWER

On November 18, 2019, Plaintiff filed a motion for an order directing Defendant Garcia to file an answer to the original Complaint within 14 days of the Court's order granting Plaintiff's motion. (ECF No. 84). Although generally a defendant who has timely waived service under Rule 4(d) must serve an answer within 60 days after the request for a waiver was sent, serving a Rule 12 motion extends the time in which a responsive pleading must be served. Fed. R. Civ. P. 12(a)(1)(A)(ii), (a)(4). "[I]f the court denies the motion or postpones its disposition until trial, the responsive pleading must be served within 14 days after notice of the court's action." Fed. R. Civ. P. 12(a)(4)(A).

Although it is unclear from the language of Rule 12(a) whether service of a Rule 12(b) motion directed at only parts of a pleading extends the time for answering the uncontested parts of the pleading, "the weight of the limited authority on this point is to the effect that the filing of a motion that only addresses part of a complaint suspends the time to respond to the entire complaint, not just to the claims that are the subject of the motion." 5B Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 1346 (3d ed. 2019). See Gamble v. Boyd

Gaming Corp., No. 2:13-CV-01009-JCM, 2014 WL 1331034, at *3 (D. Nev. Apr. 1, 2014) (collecting cases).

Following this majority approach, if the Court denies Defendant's Rule 12 motion, "the responsive pleading must be served within 14 days after notice of the court's action." Fed. R. Civ. P. 12(a)(4)(A). In light of the recommendation that Defendant's motion to dismiss be denied in part, the undersigned recommends that Defendant Garcia file his answer within fourteen (14) days after notice of the District Judge's action on the findings and recommendation and motion to dismiss. Accordingly, the Court should deny as moot Plaintiff's motion for an order directing Defendant Garcia to file an answer.

**VI.     CONCLUSION**

Based on the foregoing, the undersigned HEREBY RECOMMENDS that:

1. Plaintiff's motion for leave to file an amended complaint (ECF No. 23) be DENIED;
2. Defendant Garcia's motion to dismiss (ECF No. 35) be GRANTED IN PART and DENIED IN PART;
3. Plaintiff's claim against Defendant Garcia for excessive force be DISMISSED without prejudice;
4. Defendant Garcia file his answer within fourteen (14) days after notice of the District Judge's ruling on the instant findings and recommendation and motion to dismiss; and
5. Plaintiff's motion for an order directing Defendant to file an answer (ECF No. 84) be DENIED as moot.

These Findings and Recommendations will be submitted to the United States District Court Judge assigned to this action pursuant to the provisions of 28 U.S.C. § 636 (b)(1). Within **THIRTY (30) days** after being served with a copy of these Findings and Recommendations, any party may file written objections with the court and serve a copy on all parties. Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations." Any reply to the objections shall be served and filed within **FOURTEEN (14) days** after service of the objections. The parties are advised that failure to file objections within the specified time

may result in the waiver of rights on appeal. <u>Wilkerson v. Wheeler</u>, 772 F.3d 834, 839 (9th Cir. 2014) (citing <u>Baxter v. Sullivan</u>, 923 F.2d 1391, 1394 (9th Cir. 1991)).

IT IS SO ORDERED.

Dated: **December 4, 2019**

/s/ *Eric P. Grosjean*
UNITED STATES MAGISTRATE JUDGE